USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 95-1235 CARLOS ROMERO-BARCELO, Plaintiff, Appellant, v. MIGUEL HERNANDEZ-AGOSTO, ET AL., Defendants, Appellees.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jaime Pieras, Jr., Senior U.S. District Judge] __________________________  ____________________ Selya, Cyr and Lynch, Circuit Judges. ______________  ____________________ Michael J. Rovell, with whom Lisa I. Fair, Hilary A. Higgins, __________________ _____________ __________________ Carlos G. Latimer and Latimer, Biaggi, Rachid, Rodriguez, Suris & __________________ _____________________________________________ Godreau were on brief for appellant. _______ Marcos A. Ram rez-Lavandero, with whom Eduardo A. Vera-Ram rez ____________________________ ________________________ and Marcos A. Ram rez-Lavandero & Associates were on brief for ___________________________________________ appellees.  ____________________ January 31, 1996  ____________________ CYR, Circuit Judge. This appeal involves the most CYR, Circuit Judge. _____________ recent installment in the ongoing Cerro Maravilla political scandal, which has engaged public attention in the Commonwealth of Puerto Rico for more than fifteen years, and enlisted our attention on several occasions since 1981. In this latest sequel, plaintiff Carlos Romero-Barcelo (or "appellant") chal- lenges a district court judgment dismissing various civil rights claims, with prejudice, based on absolute legislative immunity and failure to state a claim, and dismissing, without prejudice, certain pendent claims under Puerto Rico law. We affirm the district court judgment in all respects. I I BACKGROUND1 BACKGROUND __________ On February 22, 1981, the Puerto Rico Senate, then controlled by the Popular Democratic Party ("PDP"), authorized an investigation into the brutal ambush and murders of two pro- independence youths, Arnaldo Dario-Rosado and Carlos Soto- Arrivi, by Commonwealth police officers at Cerro Maravilla in the mountains of Puerto Rico during the summer of 1978. At the time of the murders, appellant Romero-Barcelo was the Governor of Puerto Rico, and headed the New Progressive Party ("NPP") which controlled the Senate. As part of the Senate investigation, subpoenas were issued for documents in the possession of the  ____________________ 1Rule 12(b)(6) dismissals are reviewed under the rubric that "all reasonable inferences from well-pleaded facts are to be drawn in appellant['s] favor." Calero-Colon v. Betancourt- ____________ ___________ Lebron, 68 F.3d 1, 2 n.1 (1st Cir. 1995). ______ 3 Puerto Rico Justice Department. In due course, this court vacated a district court order quashing the subpoenas, In re San _________ Juan Star Co., 662 F.2d 108, 111, 118-20 (1st Cir. 1981), while ______________ noting that a state legislature might be enjoined "in a proper case." Colon Berrios v. Hernandez Agosto, 716 F.2d 85, 88 (1st _____________ ________________ Cir. 1983) (internal quotation marks omitted). Following the San Juan Star decision, the Senate _______________ Judiciary Committee (or "Committee") gained access to materials which together with other documents and testimony gathered in executive session formed the basis for televised Committee hearings (or "Hearings") which began June 15, 1983. The Senate voted to pay to televise the Hearings on a commercial station and "the hearings were apparently widely viewed." Id. at 87. ___ Thereafter, we reversed a district court order enjoining Commit- tee members and their agents from compelling some of the defen- dants in a separate civil rights action arising out of the murders of Dario-Rosado and Soto-Arrivi (the "Soto" litigation), see Soto v. Romero Barcelo, 559 F. Supp. 739, 740-41 (D.P.R. ___ ____ ______________ 1983), to appear and testify publicly at the Hearings; and, "from publishing documents in the [Committee members'] possession that are covered by the protective order issued in [the Soto litiga- tion] or that are transcripts of testimony before the Committee by [some of the Soto defendants]." Colon Berrios, 716 F.2d at _____________ 86, 87.  The Hearings were reconvened in October 1984, prepara- tory to the November 1984 gubernatorial elections in which 4 Romero-Barcelo ran for reelection and lost. Following a break in the political action, the most recent round of Hearings began in October 1991, as a prelude to a PDP-sponsored referendum in December 1991 on the future intergovernmental relationship between Puerto Rico and the United States. Once Romero-Barcelo announced his candidacy for Resident Commissioner, these Hearings were extended through May 1992. During the latter phases of the Hearings, while the PDP controlled the Senate, defendant-appellee Miguel Hernandez-Agosto served as Senate President, defendant- appellee Marco Antonio-Rigau headed the Senate Judiciary Commit- tee, and defendant-appellee Edgardo Perez-Viera, chief counsel, directed Committee investigative efforts.  Appellant Romero-Barcelo claims, inter alia, that _____ ____ Committee members slanted and manipulated the Committee testimony and evidence to suggest that he had been involved in the planning and shooting of the two youths at Cerro Maravilla, and in subse- quent attempts to cover up the murders. He alleges that witness- es were interviewed in private, without legal assistance; subpoe- nas were issued without notifying all Committee members; only one Committee investigator was appointed and he reported exclusively to the PDP majority; access to all documents, transcripts of testimony, evidence, and reports was restricted to PDP members, their aides and assistants; the Committee violated a Puerto Rico Supreme Court order that the documents and other materials be made available to the NPP minority; witnesses were not allowed access to transcripts of their prior testimony before testifying; 5 an investigative report finding no wrongdoing by Romero- Barcelo was covered up; the witness microphone was turned off when testimony did not suit defendants Hernandez-Agosto and Antonio-Rigau, or other PDP members.  Romero-Barcelo alleges that from the late 1970s the defendants and the Committee continuously labelled him as an assassin or murderer, even though no evidence was ever submitted to substantiate the charge; that defendant Perez presented information at the Hearings, and subsequently through press releases and television and radio interviews, knowing it to be false or misleading; that the defendants continually disseminated false information outside the legislative chambers, through television broadcasts made at government expense, press releases and interviews arranged and conducted at the Legislature in public areas and at television studios, political speeches delivered in various municipalities, press releases distributed to news media within and beyond Puerto Rico, as well as written and oral communications to the United States Senate and House of Representatives, federal departments, and agencies. Appellant complains that the defendants held press conferences at radio and television stations and other public forums after the Hearings, publicly passing judgment on statements made before the Committee regarding the credibility of witnesses, the strength or weakness of the evidence, and publicly accusing witnesses and third parties, including Romero-Barcelo, of perjury before the Commit- tee. This campaign allegedly was carried out through public 6 speechmaking and political campaign rallies, as well as televi- sion and radio broadcasts, newspapers,and by other public means.  In September 1992, appellant brought suit in federal district court under 42 U.S.C. 1983, asserting violations of his First, Fifth, and Fourteenth Amendment rights under the United States Constitution, and under 42 U.S.C. 1985(3), for conspiracy to deprive him of these constitutional rights. He demanded compensatory and punitive damages, costs, and attorney fees. See 28 U.S.C. 1331 (federal question) and 1343 (civil ___ rights and elective franchise). Finally, he alleged supplemental claims for libel and slander under Puerto Rico law. See 28 ___ U.S.C. 1367. The defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6), asserting absolute legislative immunity, and failure to state a claim. The district court dismissed all federal claims, with prejudice, and the libel and slander claims, without prejudice. Romero-Barcelo appealed. II II DISCUSSION2 DISCUSSION __________ We first consider the alleged conduct that the district court found to be protected under the doctrine of absolute  ____________________ 2We review Rule 12(b)(6) dismissals de novo. Clarke v. __ ____ ______ Kentucky Fried Chicken of Cal., Inc., 57 F.3d 21, 22 n.1 (1st ______________________________________ Cir. 1995). "The pleading requirements, though 'minimal,' are not 'non-existent.'" Rumford Pharmacy, Inc. v. City of East _______________________ _____________ Providence, 970 F.2d 996, 998 (1st Cir. 1992) (quoting Gooley v. __________ ______ Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988) ("Modern ________________ notions of 'notice pleading' notwithstanding, a plaintiff . . . is nonetheless required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.")). 7 legislative immunity. Next, we determine whether the remaining conduct in which defendants are alleged to have engaged gave rise to any actionable claim under either section 1983 or section 1985(3).  A. Absolute Legislative Immunity A. Absolute Legislative Immunity _____________________________ A defense of absolute legislative immunity for state legislators has been recognized since 1951. Colon Berrios, 716 ______________ F.2d at 89 (citing Tenney v. Brandhove, 341 U.S. 367 (1951)). Of ______ _________ course, absolute immunity affords protection not only from liability but from suit. Agromayor v. Colberg, 738 F.2d 55, 57 _________ _______ (1st Cir.), cert. denied, 469 U.S. 1037 (1984) (citing Helstoski _____ ______ _________ v. Meanor, 442 U.S. 500, 506-08 (1979)). State legislative ______ immunity is "'similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause'" of the United States Constitution. Negron-Gaztambide v. Hernandez-Torres, 35 _________________ ________________ F.3d 25, 27 (1st Cir. 1994), cert. denied, 115 S. Ct. 1098 (1995) _____ ______ (quoting Supreme Court of Va. v. Consumers Union of the United _____________________ ______________________________ States, Inc., 446 U.S. 719, 732 (1980)). Although not based on _____________ the doctrine of separation of powers, as is the constitutional immunity accorded Members of Congress, the state legislative immunity defense nonetheless implicates "principles of comity and federalism . . . ." Agromayor, 738 F.2d at 58-59 (citing United _________ ______ States v. Gillock, 445 U.S. 360, 370-73 (1980)). See also ______ _______ ___ ____ National Ass'n of Social Workers v. Harwood, 69 F.3d 622, 628 __________________________________ _______ (1st Cir. 1995). 8 The immunity defense in this case protects only conduct within the "sphere of legitimate legislative activity." Colon _____ Berrios, 716 F.2d at 89 (citing Doe v. McMillan, 412 U.S. 306, _______ ___ ________ 320 (1973); Tenney, 341 U.S. at 376-77). Absolute legislative ______ immunity "is justified and defined by the functions it protects _________ and serves, not by the person to whom it attaches." Negron- _______ Gaztambide, 35 F.3d at 27 (quoting Forrester v. White, 484 U.S. __________ _________ _____ 219, 227 (1988)). "[I]t is the nature of the particular act rather than the title of the office which governs whether immuni- ty attaches." Acevedo-Cordero v. Cordero-Santiago, 958 F.2d 20, _______________ ________________ 21 (1st Cir. 1992); see also Agromayor, 738 F.2d at 59. "Acts . ___ ____ _________ . . that are administrative in nature do not 'give rise to absolute immunity from liability in damages under 1983.'" Negron-Gaztambide, 35 F.3d at 28 (quoting Forrester, 484 U.S. at _________________ _________ 229); see also Agromayor, 738 F.2d at 59-60; Cutting v. Muzzey, ___ ____ _________ _______ ______ 724 F.2d 259, 261-62 (1st Cir. 1984). The scope of state legislative immunity from suit under section 1983 is "essentially coterminous" with the absolute immunity accorded members of Congress under the Speech or Debate Clause of the United States Constitution (or "the Clause"). Harwood, 69 F.3d at 629 (citing Supreme Court of Va., 446 U.S. at _______ ____________________ 732-33). For the Clause to apply, the activity must be "'an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitu- 9 tion places within the jurisdiction of either House.'" Agromay- ________ or, 738 F.2d at 59 (quoting Gravel v. United States, 408 U.S. __ ______ _____________ 606, 625 (1976)). It does not cover "actions that are only 'casually or incidentally related to legislative affairs,'" Harwood, 69 F.3d at 630 (quoting United States v. Brewster, 408 _______ _____________ ________ U.S. 501, 528 (1972)), "or which fall outside the 'legitimate legislative sphere.'" Id. (quoting Eastland v. United States ___ ________ ______________ Servicemen's Fund, 421 U.S. 491, 503 (1975)).  _________________ "While the core protection conferred by the Clause concerns speech or debate by a member of Congress on the floor of either the Senate or the House", id. (citing Gravel, 408 U.S. at ___ ______ 625), "the penumbra of the Clause sprawls more broadly." Id. ___ For example, the Clause covers voting; id. (citing Kilbourn v. __ ________ Thompson, 103 U.S. 168, 204 (1880)); "conduct at legislative ________ hearings," but not "private publication by a Senator on his own behalf of documents submitted at a hearing . . . "; Colon _____ Berrios, 716 F.2d at 90 (citing Gravel, 408 U.S. at 624-27); _______ ______ "members . . . and their staffs" for preparation of "an allegedly defamatory report"; id.; and members in "voting for its publica- __ tion," but not "general public dissemination [of the report] by legislative functionaries." Id. (citing Doe, 412 U.S. at 313- ___ ___ 14). The Clause covers "a committee hearing or report designed to inform the [legislative] membership," but not an individual "Senator's publication of press releases or news letters," id. __ (citing Hutchinson v. Proxmire, 443 U.S. 111, 123-33 (1979)), nor __________ ________ individual "political" activities, such as are involved in 10 "legitimate 'errands' performed for constituents, the making of appointments with Government agencies, [and] assistance in securing Government contracts." Harwood, 69 F.3d at 631 (alter- _______ ation in original) (quoting Brewster, 408 U.S. at 512) (internal ________ quotation marks omitted). The district court concluded that the Cerro Maravilla hearings "fell well within the legitimate legislative sphere" and "that the defendants are therefore immune from any civil or criminal prosecution based on conduct directly related to the Cerro Maravilla investigations." Barcelo v. Agosto, 876 F. Supp. _______ ______ 1332, 1342-43 (D.P.R. 1995). The court relied on our earlier analysis of the Hearings: The hearings were properly authorized by Puerto Rico Senate Resolution 91 (February 22, 1981), which provides a specific mandate to the Senate Judiciary Committee to inquire into the activities of the police and other agencies of the government leading up to and during the Cerro Maravilla incident as well as the behavior of the executive branch in response to the incident. Investigations such as this Senate Judi- ciary Committee investigation constitute an essential component of the legislative pro- cess. . . . Id. (quoting Colon Berrios, 716 F.2d at 90).  ___ _____________ The district court then held that all of Romero-Barce- lo's "claims regarding allegedly unconstitutional procedures employed by the Committee relating to the issuance of subpoenas, the examination of witnesses, and the gathering of evidence, as well as his claims regarding the allegedly unlawful use of public funds to broadcast the hearings and regarding slanderous comments 11 allegedly made by the defendants must be DISMISSED." Id. at ___ 1343. The court dismissed the claims against Hernandez-Agosto and Antonio-Rigau, members of the Puerto Rico Legislature, as well as the claim against Perez-Viera, chief counsel and investi- gator for the Committee. Id. at 1343 n.8 (citing Eastland v. ___ ________ United States Servicemen's Fund, 421 U.S. at 507 (Speech or _________________________________ Debate Clause immunity for issuance by investigative subcommittee extends to its chief counsel)). The court also rejected Romero- Barcelo's claim "that the defendants abused their positions and, solely [for] political reasons, slanted or manipulated the testimony offered during the hearings to portray the plaintiff in a negative light." Id. at 1343 (citing Tenney, 341 U.S. at 377 ___ ______ ("The claim of an unworthy purpose does not destroy the privi- lege.")). The district court ruled, however, that "defendants' alleged dissemination of false, defamatory, and slanderous information about the plaintiff through press releases, inter- views, and speeches occurring outside the strict scope of their legislative duties" was not protected by legislative immunity. Id. (citing Hutchinson, Gravel, and Doe).  ___ __________ ______ ___ 1. Allegations of Criminal Misconduct  1. Allegations of Criminal Misconduct  __________________________________ Appellant argues that the defendants are liable in damages under section 1983 for their alleged criminal conduct  ________ including subornation of perjury, intimidation of witnesses and obstruction of justice during the Hearings even assuming the Hearings were a proper legislative function. Citing to Brewster, ________ 408 U.S. at 526, he relies for further support on the reasoning 12 in Gravel, 408 U.S. at 626: "While the Speech or Debate Clause ______ recognizes speech, voting, and other legislative acts as exempt from liability that might otherwise attach, it does not privilege either Senator or aide to violate an otherwise criminal law in preparing for or implementing legislative acts."  Romero-Barcelo's reliance on Gravel and Brewster is mis- ______ ________ placed, however, as those cases concerned whether a legislative immunity defense based on the Speech or Debate Clause protected Members of Congress from federal criminal prosecution. In _______ ________ ___________ Gillock, the Supreme Court carefully distinguished a State _______ legislator's narrower right to absolute legislative immunity from private civil actions, which does not include immunity from federal criminal prosecution.  First, Tenney was a civil action brought by a ______ private plaintiff to vindicate private rights. Moreover, the cases in this Court which have recognized an immunity from civil suit for state officials have presumed the existence of federal criminal liability as a restraining factor on the conduct of state officials. . . . Thus, in protecting the independence of state legislators, Tenney and ______ subsequent cases on official immunity have drawn the line at civil actions. 445 U.S. 372-73. Absolute immunity from suit for civil damages under section 1983 allegedly based on criminal conduct does not necessarily immunize the legislator or his aide from federal 13 criminal prosecution.3 But the legislator is immunized from suit for damages under section 1983.   ____________________ 3As the district court dictum concerning immunity from criminal prosecution "based on conduct directly related to the Cerro Maravilla investigations," Barcelo, 876 F. Supp. at 1343, _______ is not necessary to its holding, nor to ours, we do not endorse it.  14 2. Contemporaneous Telecasting of Hearings  2. Contemporaneous Telecasting of Hearings  _______________________________________ Appellant argues that defendants' decision to use public funds to finance live telecasts of these Hearings was not protected by absolute legislative immunity. The Supreme court made clear, in Doe, 412 U.S. at 313-14, that the introduction of ___ documents at an open legislative hearing is protected conduct but a private republication of the documents by a Member of Congress is not. We hold that the legislative decision to sponsor live telecasts of the open Committee hearings authorized a legislative disclosure rather than a private republication which clothed defendants with absolute legislative immunity from suit under section 1983.4 But even assuming the contemporaneous "publication" of the open Hearings went beyond the reasonable requirements of the legislative function, a matter we do not decide, defendants' determination that the Hearings should be televised at public expense constituted legislative conduct absolutely immune from civil suit. Doe, 412 U.S. at 315 ("Mem- ___ bers of Congress are themselves immune for ordering or voting for  ____________________ 4In Hutchinson, 443 U.S. at 116 n.3, the Supreme Court said: __________ "we assume, without deciding, that a speech printed in the Congressional Record carries immunity under the Speech or Debate Clause as though delivered on the floor." Accordingly, the Court did not take issue with a district court suggestion that "a television or radio broadcast of [a Senator's] speech from the Senate floor" would receive the protection of the Speech or Debate Clause. Id. at 119. But the Court did not agree with the __ suggestion that such a broadcast is analogous to a Senator issuing a press release relating to a floor speech. Id. See __ ___ also Cable News Network v. Anderson, 723 F. Supp. 835 (D.D.C. ____ ___________________ ________ 1989) (Speech or Debate Clause bars judicial review of House rule regulating television coverage of hearings).  15 a publication going beyond the reasonable requirements of the legislative function . . . .").5  3. Immunity of Committee Counsel 3. Immunity of Committee Counsel _____________________________ Next, appellant argues that the immunity of a legisla- tive aide is less broad than that available to a legislator. Consequently, says appellant, the chief counsel to the Committee, defendant-appellee Perez-Viera, is not immune from suit. Appel- lant relies on Dombrowski v. Eastland, 387 U.S. 82, 85 (1967) __________ ________ (per curiam), wherein the Supreme Court affirmed a grant of summary judgment for the Chairman of a Senate subcommittee but reversed a summary judgment order in favor of subcommittee counsel, explaining that the "doctrine [of legislative] immunity is less absolute, although applicable, when applied to officers or employees of a legislative body, rather than to legislators themselves." Eight years later, the Supreme Court considered whether the absolute immunity of the same Senate Subcommittee Chairman extended to the same subcommittee counsel. Eastland v. ________ United States Serviceman's Fund, 421 U.S. at 506-508. The Court _______________________________  ____________________ 5Appellant argues that it was improper to grant judgment for defendants under Rule 12(b)(6), because further factfinding was required to determine whether their decision to use public funds to finance live telecasts is protected by absolute legislative immunity. Appellant relies on dicta in Colon Berrios, declining _____________ to reach "the issue of whether the Senate's expenditure of funds for live television broadcast of the hearings falls within the legitimate legislative sphere" because, inter alia, it "would _____ ____ involve extensive fact-finding" relating to First Amendment issues regarding prior restraint. 716 F.2d 90 n.3. In this case, however, there is no need to reach the First Amendment matters which loomed in Colon Berrios, since we are not reviewing _____________ a Rule 12(b)(6) denial of injunctive relief, but a dismissal of a civil rights action for damages based in part on a broadcast which has already occurred.  16 "[drew] no distinction between the Members and the Chief Coun- sel," id. at 507, stating that "the day-to-day work of [legisla- ___ tive] aides is so critical to the Members' performance that they must be treated as [the Members'] alter egos . . . ." Id. ___ (alteration in original) (quoting Gravel, 408 U.S. at 616-17) ______ (internal quotation marks omitted). It noted, however, that "[t]he complaint . . . does not distinguish between the activi- ties of the Members and those of the Chief Counsel," thereby distinguishing Dombrowski v. Eastland. Id. Appellant __________ ________ ___ argues that his complaint does distinguish between the activities of Hernandez-Agosto and Antonio-Rigau, on the one hand, and Perez-Viera on the other. Nevertheless, the relevant allegation in the complaint that chief counsel Perez-Viera presented information at the Committee hearings, knowing it to be false and misleading is part and parcel of the parallel allegation that all legislator-defendants used the Hearings to disseminate information about Romero-Barcelo, knowing it to be false or misleading. Thus, in applying the doctrine of absolute legisla- tive immunity to these facts, we draw no distinction between the legislator-defendants and Committee counsel.  B. Civil Rights Claims B. Civil Rights Claims ___________________ We next consider the claims not barred by absolute legislative immunity.  1. Section 1983 1. Section 1983 ____________ "An actionable section 1983 claim must allege facts sufficient to support a determination '(i) that the conduct 17 complained of has been committed under color of state law, and (ii) that [the alleged] conduct worked a denial of rights secured by the Constitution or laws of the United States.'" Rumford _______ Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 998 (1st _____________ _______________________ Cir. 1992) (quoting Chongris v. Board of Appeals, 811 F.2d 36, 40 ________ ________________ (1st Cir.), cert. denied, 483 U.S. 1021 (1987)). ____ ______ a. Procedural Due Process a. Procedural Due Process ______________________ A viable procedural due process claim must demonstrate a "deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' . . . without due _______ ___ process of law." Lowe v. Scott, 959 F.2d 323, 340 (1st Cir. _______ __ ___ ____ _____ 1992) (quoting Zinermon v. Burch, 494 U.S. 113, 125 (1990)) ________ _____ (internal quotation marks omitted).6  i. Deprivation of Liberty Interest  i. Deprivation of Liberty Interest  _______________________________ Romero-Barcelo alleges that the defamatory statements by defendants deprived him of a "liberty" interest in his good name and reputation. Barcelo, 876 F. Supp. at 1344. The Supreme _______ Court has made it clear that an actionable deprivation of a liberty interest in one's reputation "must be accompanied by a change in the [victim's] status or rights (under substantive state or federal law), perhaps as a touchstone (or concrete evidence) of the fact that the injury to reputation was inflicted as part of a conscious government policy and is serious enough to interfere with other liberties of the sort suggested in Meyer [v. _____  ____________________ 6Of course, if the challenged conduct constitutes "state action," the "color of state law" requirement is met as well. Lugar v. Edmonson Oil Co., 457 U.S. 922, 935 (1982). _____ ________________ 18 Nebraska, 262 U.S. 390 (1923)]," Beitzell v. Jeffrey, 643 F.2d ________ ________ _______ 870, 878 (1st Cir. 1981) (citing Paul v. Davis, 424 U.S. 693, ____ _____ 706, 708, 710 (1976) (in the absence of more tangible interests such as employment, reputation alone is neither a "property" interest nor a "liberty" interest sufficient to require procedur- al due process)), such "as the right 'to engage in any of the common occupations of life,' or 'to marry, to establish a home and bring up children.'" Id. at 877 (citing Meyer, 262 U.S. at ___ _____ 399). As this court indicated in Beitzell, no constitutionally ________ protected "liberty" interest in reputation is infringed unless the reputational harm is "unusually serious . . . as evidenced by the fact that employment (or some other right or status) is affected." Id. at 878.  ___ The district court concluded that no serious harm had befallen Romero-Barcelo. Barcelo, 876 F. Supp at 1345. It _______ observed that he had been elected Resident Commissioner in 1992, "immediately after the last barrage of allegedly libelous state- ments." Id. The district court noted as well that Romero- __ Barcelo had lost the gubernatorial election in 1984, but it ruled that any claim based on that "serious harm," some eight years earlier, was time-barred. Id. at 1346 (citing Wilson v. Garcia, __ ______ ______ 471 U.S. 261, 276 (1985) (in section 1983 action, court borrows local limitation period applicable to personal injury actions); Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 2-3 (1st Cir. 1995) ____________ _________________ 19 (citing to P.R. Laws Ann. tit. 31, 5298(2) (1991)) (one-year limitation on personal injury actions).7  ii. The Process Due ii. The Process Due _______________ Romero-Barcelo claims a deprivation of his right to be free from "'abusive attacks on his honor, reputation and private or family life' as established by Article II, Section 8, of the Puerto Rico Constitution." Barcelo, 876 F. Supp. at 1346.8 _______ Although the Section 8 claim is based in commonwealth law, hence not directly actionable under section 1983, Quintero de Quintero ____________________ v. Aponte-Roque, 974 F.2d 226, 230 (1st Cir. 1992), Section 8 may ____________ give rise to a constitutionally protected "liberty interest." Assuming arguendo, as did the district court, that Section 8 ________ creates a constitutionally protected "liberty" interest, we consider whether Romero-Barcelo received the process due.  The process due depends in large part on the circum- stances. Watson v. Caton, 984 F.2d 537, 540-41 (1st Cir. 1993) ______ _____ (per curiam) (citing Mathews v. Eldridge, 424 U.S. 319, 335 _______ ________  ____________________ 7Appellant misplaces reliance on Limerick v. Greenwald, 666 ________ _________ F.2d 733 (1st Cir. 1981), wherein a timely complaint alleged that defendants' actions threatened "unusually serious harm" to plaintiffs' reputations, "stripping them of their responsibili- ties as bank managers and threatening their future employabili- ty." Id. at 735. On appeal, Romero-Barcelo claims, for the __ first time, that his law practice suffered. He urges us to assume as much based on defendants' efforts to brand him as a "murderer" and "assassin." We decline his invitation to bypass trial court consideration of this factual question in the first instance. See Havinga v. Crowley Towing and Transp. Co., 24 F.3d ___ _______ ______________________________ 1480, 1483 n.5 (1st Cir. 1994). 8Article II, 8, provides: "Every person has the right to the protection of law against abusive attacks on his honor, reputation and private or family life." P.R. Const., art. II,  8. 20 (1976)). As noted in Watson, the "cases distinguish sharply ______ between deprivations caused by 'random, unauthorized' conduct of state officials, and deprivations caused by conduct 'pursuant to established state procedure.'" Id. at 541 (quoting Hudson v. __ ______ Palmer, 468 U.S. 517, 532 (1984)). "For the former, the state is ______ not automatically liable; in the latter case there may be liabil- ity where the state policy approves or directs the conduct but falls below constitutional standards." Id. (footnote omitted). __ Romero-Barcelo does not claim, however, that defendants' unimmun- _____ ized actions were taken pursuant to either the Commonwealth's direction or its established policy. Rather, he alleges that defendants made numerous libelous statements "in television studios, in political speeches made throughout the island, and in political press releases." Barcelo, 876 F. Supp. at 1345. Nor _______ has he alleged that the actions complained of were other than "random, unauthorized conduct" on the part of the individual defendants. It is rudimentary that a deprivation of procedural due process caused by "random, unauthorized conduct" of a State offi- cial is not actionable under section 1983 unless, amongst other things, "no adequate 'post-deprivation remedy' is available under state law." Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st __________ ______________ Cir. 1994). Romero-Barcelo neither alleged nor established that Puerto Rico law affords no adequate remedy for whatever liberty interest deprivation may have been sustained under Section 8 of the Puerto Rico Constitution. Absent either an allegation 21 regarding the inadequacy of commonwealth tort remedies for slander and libel, or even argumentation on the point, we decline to address the question. See Rumford Pharmacy Inc., 970 F.2d at ___ _____________________ 999; Monahan v. Dorchester Counseling Ctr., Inc., 961 F.2d 987, _______ _________________________________ 994 n.7 (1st Cir. 1992). We note further that the district court's conclusion that Section 8 "is the main source of protec- tion against libel and slander under Puerto Rico law," Barcelo, _______ 876 F. Supp. at 1346 n.11 (citing Cortes Portalatin v. Hau Colon, _________________ _________ 3 T.P.R. 1019 (1975)), is not challenged on appeal. See also ___ ____ Willhauck v. Halpin, 953 F.2d 689, 704 (1st Cir. 1991) (court of _________ ______ appeals may "affirm on any independently sufficient ground").  b. The First Amendment Claim b. The First Amendment Claim _________________________ Appellant claims violations of his First Amendment rights to freedom of speech and association. Before the district court he claimed "that his right to free speech was chilled and his right to associate with the NPP was adversely affected by the [allegedly] defamatory statements made by the defendants." Barcelo, 876 F. Supp. at 1348. The district court found, howev- _______ er, "that given the fact that he was elected Resident Commission- er on the NPP ticket, [Romero-Barcelo's] claims regarding injury to his right to associate with the NPP ring hollow." Id. __ Further, the court concluded that "there [was] no indication that the defendants compelled the plaintiff to advocate either an unpopular or any other type of view." Id. at 1348 n.15 (con- __ trasting Wooley v. Maynard, 430 U.S. 705, 714-15 (1977) (requir- ______ _______ ing display of "Live Free or Die" motto on vehicle license plate 22 violates First Amendment right "to refrain from speaking."). We agree.  On appeal, however, Romero-Barcelo contends that he "alleged that he was singled out for . . . harassment and deprivation of rights because of his beliefs and political association." The crux of this argument is that defendants' alleged conduct, both within the Hearings and without, was undertaken because of Romero-Barcelo's association with the NPP. The Supreme Court has held that the First Amendment "protects nonpolicymakers from being drummed out of public service on the basis of their political affiliation or advocacy of ideas." Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 56-57 (1st _______________ __________________ Cir. 1990) (citing Branti v. Finkel, 445 U.S. 507, 517 (1980); ______ ______ Elrod v. Burns, 427 U.S. 347, 357 (1976) (plurality opinion)). _____ _____ But Romero-Barcelo most assuredly qualified as an NPP policymak- er. See id. at 57 n.6. Thus, the district court correctly found ___ __ no First Amendment protection for "a politician whose rights to freedom of speech, freedom of association, and freedom 'to disassociate [oneself] from unpopular views' have been injured by other politicians seeking to undermine his credibility within his own party and with the electorate." Barcelo, 876 F. Supp. at _______ 1348 (alteration in original) (footnote omitted). 2. Section 1985(3) 2. Section 1985(3) _______________ An actionable section 1985(3) claim must allege that (i) the alleged conspirators possessed "some racial, or perhaps otherwise class-based, invidiously discriminatory animus," 23 Griffin v. Breckenridge, 403 U.S. 88, 102 (1971), and (ii) their _______ ____________ alleged conspiracy was "aimed at interfering with rights . . . protected against private, as well as official, encroachment." United Bhd. of Carpenters & Joiners of America v. Scott, 463 U.S. ______________________________________________ _____ 825, 833 (1983). See also Libertad v. Welch, 53 F.3d 428, 446 ___ ____ ________ _____ (1st Cir. 1995) (citing Bray v. Alexandria Woman's Health Clinic, ____ ________________________________ 113 S. Ct. 753, 758 (1993)). The conspiracy allegation must identify an overt act. See Griffin, 403 U.S. at 93; Libertad, 53 ___ _______ ________ F.3d at 450 n.18. If no racial animus is charged, a discrimina- tory class-based animus must be alleged. See Harrison v. ___ ________ Brooks, 519 F.2d 1358, 1359 (1st Cir. 1975) (citing Griffin, 403 ______ _______ U.S. at 102). "The requirement that the discrimination be 'class-based' is not satisfied by an allegation that there was a conspiracy which affected the interests of a class of persons similarly situated with the plaintiffs. Rather, the complaint must allege facts showing that the defendants conspired against the plaintiffs because of their membership in a class and that the criteria defining the class were invidious." Id. at 1359-60. __ The complaint alleged that the three defendants "con- spired . . . to launch a negative publicity campaign funded with public funds and to label [him] as an assassin and murderer in order to end his political career and enhance their own. [The] defendants allegedly used their elected political positions to keep the Committee investigations alive, and to reactivate those committee hearings at politically advantageous opportunities." Barcelo, 876 F. Supp. at 1349. The district court held these _______ 24 allegations insufficient to support a conspiracy claim under section 1985(3), rejecting the implicit assumption that "since __________ the defendants are members of the opposing political party and had substantial control over the Committee hearings, they must have had a conspiracy." Id. at 1350. The court further found no __ allegation of an overt act, and no articulation of a "clear class-based invidious discriminatory animus behind the alleged actions of the alleged conspirators." Id. We agree that Romero- ___ Barcelo's allegations were insufficient to support a section 1985(3) claim.  On appeal, Romero-Barcelo does not address these specific shortcomings in the complaint, choosing instead to rest upon a conclusory statement that the allegations are sufficient for a section 1985(3) claim,9 and the argument that the height- ened pleading requirement for section 1985(3) conspiracy claims under Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977), ________ _________ cert. denied, 434 U.S. 1077 (1978) ("[C]omplaints cannot survive _____ ______ a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts."), is no longer good law, citing to Leatherman v. __________ Tarrant County Narcotics Intelligence & Coordination Unit, 113 S. _________________________________________________________ Ct. 1160 (1993). Leatherman rejected a "heightened pleading __________ standard" in civil rights actions claiming municipal liability under section 1983. Id. at 1161. Even assuming Leatherman ___ __________  ____________________ 9Although appellant argues that he should have been given an opportunity to amend the complaint, our review of the record on appeal discloses no indication that he made such a request below. 25 applies to the present claim, a matter we need not address, we do not view the failure to allege essential elements of a section 1985(3) claim as any mere failure to comply with a "heightened pleading requirement." See Griffin, 403 U.S. at 102-103.   ___ _______ 26 III III CONCLUSION CONCLUSION __________ For their alleged conduct within the legislative forum, we conclude that defendants were protected by absolute legisla- tive immunity. For their conduct outside the legislative forum, the allegations were insufficient to state actionable claims under sections 1983 and 1985(3). Appellant Romero-Barcelo has no actionable procedural due process claim under section 1983, either because he had no constitutionally protected "liberty" interest, or because Puerto Rico law afforded whatever post- deprivation process may have been due. Nor did appellant have an actionable First Amendment claim, since there is no constitu- tional ban against the alleged conduct. Finally, appellant failed to plead all essential elements of an actionable conspira- cy claim under section 1985(3). The district court The district court _________________________ judgment is affirmed. Costs to appellees. judgment is affirmed. Costs to appellees. ____________________ __________________ 27